[Cite as *State v. D-Bey*, 2021-Ohio-60.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

STATE OF OHIO,                    :

    Plaintiff-Appellee,          :

                                 No. 109000

    v.                           :

DESEAN D-BEY,                     :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART; REVERSED
IN PART; REMANDED
**RELEASED AND JOURNALIZED:** January 14, 2021

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-639743-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Eben O. McNair, Assistant Prosecuting
Attorney, *for appellee.*

Eric M. Levy, *for appellant.*

EILEEN A. GALLAGHER, J.:

{¶ 1} Defendant-appellant Desean D-Bey appeals his convictions and the

trial court's denial of his postconviction motion to withdraw his guilty pleas after he

pled guilty to one count of having weapons while under disability and one count of attempted domestic violence. D-Bey contends that his conviction for attempted domestic violence should be vacated because it is a "nonexistent" offense. He further contends that the trial court erred in failing to order a mental health evaluation before accepting his guilty pleas and that his trial counsel was ineffective for (1) failing to request a mental health evaluation or that the case be transferred to the mental health docket, (2) failing to "explore" allegedly applicable defenses and (3) failing to provide "mitigating mental health information" to the court for consideration during sentencing. D-Bey also contends that the trial court erred in denying his motion to withdraw his guilty pleas without an evidentiary hearing, that his prison sentences are "excessive" given "the facts on record" and that the trial court erred in ordering him to pay court costs that were not imposed at the sentencing hearing.

{¶ 2} For the reasons that follow, we reverse the trial court to the extent it imposed court costs and remand the matter for the trial court to vacate its order imposing court costs. We otherwise affirm the trial court.

**Procedural History and Factual Background**

{¶ 3} On May 10, 2019, a Cuyahoga County Grand Jury indicted D-Bey on four counts: one count of having weapons while under disability in violation of R.C. 2923.13(A)(2), a third-degree felony (Count 1); one count of having weapons while under disability in violation of R.C. 2923.13(A)(3), a third-degree felony (Count 2); one count of domestic violence in violation of R.C. 2919.25(A), a fourth-degree

felony (Count 3); and one count of domestic violence in violation of R.C. 2919.25(C), a second-degree misdemeanor (Count 4). The charges arose out of a May 3, 2019 incident in which D-Bey allegedly struck his girlfriend's nine-year-old son, then obtained a firearm and threatened to shoot a male with whom he had had an altercation a week earlier.

{¶ 4} D-Bey's girlfriend, R.S., called police after D-Bey, who was "very intoxicated," allegedly made numerous verbal threats towards her and her children, including threatening to kill them and to burn down their house. As R.S. attempted to get her older son (age 13) into the car after he got off the bus from school, D-Bey allegedly grabbed him by his shirt and would not let him go. Once the older child was released and got into the car, D-Bey then allegedly walked over to the passenger side of the vehicle, where R.S.'s younger son was sitting, opened the door and struck the child several times in the face before R.S. drove away with the children. Both of the children allegedly had various mental disabilities.

{¶ 5} After R.S. drove away, one of D-Bey's cousins picked D-Bey up in her vehicle. D-Bey allegedly removed a handgun from the glovebox of his cousin's vehicle, loaded it and asked his cousin to take him to a location so that he could shoot a male who had assaulted him the week before. When she refused, D-Bey allegedly told his cousin to keep driving or he would shoot her. Police eventually located and pulled over the cousin's vehicle. D-Bey was arrested and transported to the Cuyahoga County Jail; however, because he was "heavily intoxicated," he was

"medically declined" and transported to St. Vincent Charity Hospital for medical treatment. Once he "sobered up," he was transported back to the jail.

{¶ 6} D-Bey initially pled not guilty to all charges. The parties later reached a plea agreement. Pursuant to the plea agreement, D-Bey agreed to plead guilty to Count 1 as indicted and an amended Count 3, i.e., attempted domestic violence in violation of R.C. 2919.25(A) and 2923.02, a fifth-degree felony. In exchange for D-Bey's guilty pleas, the remaining counts would be nolled.

{¶ 7} On August 5, 2019, the trial court held a change-of-plea hearing. After the state and defense counsel set forth the terms of the plea agreement on the record, defense counsel stated that he had "fully pre-tried Mr. D-Bey's case" and confirmed that there was "a factual basis" for D-Bey to plead guilty to the offenses at issue. The trial court then proceeded with the plea colloquy.

{¶ 8} In response to the trial court's preliminary questions, D-Bey indicated that he understood what had been stated on the record by the state and defense counsel regarding the plea agreement, that he was a United States citizen, that he had graduated from high school and had completed "some college" and that he was not then under the influence of any drugs, alcohol or medication. D-Bey further indicated that he was satisfied with the representation he had received from his trial counsel and that no promises or threats had been made to induce him to change his pleas.

{¶ 9} The trial court advised D-Bey of his constitutional rights and confirmed that he understood the rights he would be waiving by entering his guilty

pleas. The trial court then identified each of the counts to which D-Bey would be pleading guilty and set forth the potential prison sentences and fines he would face on each count by pleading guilty.

{¶ 10} D-Bey pled guilty to each of the charges in accordance with the plea agreement. The trial court found that D-Bey "had entered into this plea agreement knowingly, voluntarily and intelligently," accepted his guilty pleas and dismissed the remaining counts with which he had been charged. The trial court then referred D-Bey to the probation department for a presentence investigation and report ("PSI") and scheduled a sentencing hearing for the following month.

{¶ 11} After the trial court scheduled the sentencing hearing, defense counsel advised the trial court that "there is a mental health part to this." He noted that D-Bey was receiving mental health services from Recovery Resources and was on new medications due to "post traumatic stress disorder that is tethered to his own past." Defense counsel requested that the trial court refer D-Bey to the court psychiatric clinic for a mitigation evaluation prior to sentencing. The trial court denied the request, noting that the court psychiatric clinic was "[u]ndermanned and overstaffed" and that D-Bey was "already treating." Defense counsel stated that he understood and that he would "bring documentation to verify" D-Bey's mental health diagnoses and treatment.[1]

---

[1] It is unclear from the record whether defense counsel, in fact, provided this documentation to the trial court.

{¶ 12} On September 4, 2019, the trial court held a sentencing hearing. The state, R.S., defense counsel and D-Bey addressed the trial court at the sentencing hearing.

{¶ 13} R.S. requested leniency in sentencing. She stated that, at the time of the incident, D-Bey was "heavily intoxicated" and "totally out of his mind." She indicated that D-Bey had been upset about an incident that occurred a week earlier involving a family member, that it "wasn't sitting well with him" and that, as a result, he had begun drinking at approximately 10:00 a.m. on the day of the incident. R.S. stated that she had been with D-Bey for a year-and-a-half, that he had helped her with her children, that "overall" he had been "a good person" to her and that this was the first time an incident like this had occurred. She stated that D-Bey had had a difficult upbringing and that he had recently been sick and unable to work, which had taken "a mental toll" on him. R.S. also claimed that D-Bey had been "newly diagnosed" with PTSD and that he had been going to counseling and seeing a psychiatrist to "address[] those issues."

{¶ 14} The transcript from the sentencing hearing reflects that defense counsel provided a letter to the trial court regarding D-Bey's participation in vocational and employment programming. Defense counsel stated that D-Bey was in "a terrible mental state" when he first met him and that "the first few times" he interacted with D-Bey "it was difficult to get past the tears and the fact that he was sobbing." Defense counsel indicated that he had encouraged D-Bey to "put himself into the mental health resources in the community," take prescribed medications,

maintain sobriety and seek employment and stated that D-Bey "has done all of those things." Defense counsel described D-Bey's volatile childhood and asserted that, at the time of the incident, D-Bey "was in some spiral[ing] mental disorder, whether it was occasioned by alcohol or mental health problems." He stated that D-Bey now had "a different demeanor and different outlook about this matter," that D-Bey acknowledged that he had put other people, including children, in danger and that he was "ready to atone" for his actions in "any way" the trial court saw fit, including by "being incarcerated." Defense counsel requested that the trial court consider imposing community control sanctions.

{¶ 15} D-Bey also requested leniency in sentencing. He stated that after he witnessed his father commit suicide, he became addicted to cocaine and was a drug addict for 20 years from 1988 to 2008. He claimed that, since that time, he had been "trying to get [his] life together." He stated that on the date of the incident, he "just lost it." He denied threatening his cousin. He admitted grabbing her gun but claimed to have put it up to his own head, contemplating suicide. He stated that when he started thinking about what he had done to R.S., he "felt so horrible" he wanted to kill himself, but that he then thought about how his mother would react to his death and decided against committing suicide. He claimed that he was "not a bad person" and that he had just "made a bad decision." He stated that he had "got[ten] in trouble a few years ago," but that that incident involved a situation "out of [his] control" and that he "had to defend" himself. D-Bey stated that he was now

taking his medication, was seeing a therapist and psychiatrist, had obtained a certification as a tow operator and was now "doing everything I have to do."

{¶ 16} After reviewing and considering the PSI, "the seriousness and recidivism factors and the purposes and principles of the sentencing statute" and the information presented at the sentencing hearing, the trial court sentenced D-Bey to a 36-month prison sentence on Count 1 and a 12-month sentence on Count 3, as amended, to be served concurrently. The trial court also sentenced D-Bey to three years of discretionary postrelease control.

{¶ 17} In its September 6, 2019 sentencing journal entry, the trial court stated: "The court considered all required factors of the law. The court finds that prison is consistent with the purpose of R.C. 2929.11." Although the trial court imposed concurrent sentences at the sentencing hearing, in its sentencing journal entry, the trial court indicated that the sentences were to be served consecutively. In addition, although the trial court had not imposed costs at the sentencing hearing, costs were imposed in the trial court's sentencing journal entry.

{¶ 18} D-Bey appealed his convictions. On December 17, 2019, D-Bey filed a motion for a limited remand for the trial court to correct clerical errors in its sentencing journal entry. On December 31, 2019, this court remanded to the trial court "for the sole purpose of entering a nunc pro tunc entry to reflect the sentence that was imposed at the sentencing hearing." The case was remanded to the trial court until January 31, 2020.

{¶ 19} On January 13, 2020, while the case was on remand, D-Bey filed, pro se, a motion to withdraw his guilty pleas pursuant to Crim.R. 32.1. D-Bey contended that his "trial counsel's advice precluded [him] from entering a plea of guilt knowingly, voluntarily and intelligently." D-Bey claimed that he was denied the effective assistance of trial counsel because trial counsel (1) failed to present documentation of his mental health issues, including his diagnoses for major depression disorder, generalized anxiety disorder and posttraumatic stress disorder, to the trial court, (2) never requested that the trial court conduct a mental health evaluation of D-Bey and (3) failed to object when the prosecutor "submitted inadmissible evidence" of a dismissed kidnapping charge at his sentencing hearing. D-Bey contended that he would not have entered his guilty pleas if he had known "the prosecutor was using a police report from a dismissed charge which was read during [his] sentencing."

{¶ 20} In support of his motion, D-Bey attached copies of what he described as "Defendant[']s p[s]ychological evaluation," "mental health documents" from Recovery Resources and the "police report" from the dismissed kidnapping charge. The "psychological evaluation" was a report dated December 4, 2018 from Richard G. Litwin, Ph.D., a licensed clinical psychologist ("Dr. Litwin's report"). The report indicates that D-Bey had been "referred for evaluation to help with vocational planning" and addressed the extent to which D-Bey had the physical, intellectual and emotional functionality to obtain a commercial driver's license and become a truck driver or to work as a crane operator. The "mental health documents" consist

of two, single-page letters from Recovery Resources dated August 1, 2019 and August 23, 2019, identifying the services in which D-Bey had been participating and setting forth his "current diagnosis and medication regimen." The "police report" was a copy of the complaint that was filed in the Cleveland Municipal Court relating to the May 3, 2019 incident.

{¶ 21} The state opposed the motion. The state argued that the trial court lacked jurisdiction to rule on the motion while D-Bey's direct appeal was pending and that D-Bey had not demonstrated a manifest injustice warranting withdrawal of his guilty pleas.

{¶ 22} On January 28, 2020, D-Bey filed, pro se, a supplemental memorandum in support of his motion to withdraw his guilty pleas, requesting that the trial court "redress and state the conditions in which the sentence was modified" and asserting that he was "misinformed by counsel and mislead to believe he was receiving probation." No evidence was submitted in support of this supplemental memorandum.

{¶ 23} This court extended the remand order until April 2, 2020 for the trial court to issue a nunc pro tunc order as to the sentencing journal entry and rule on D-Bey's motion to withdraw his guilty pleas. On February 7, 2020, the trial court issued a nunc pro tunc journal entry indicating that the sentences on Counts 1 and 3 were to be served concurrently. The trial court did not modify the imposition of costs.

{¶ 24} On February 24, 2020, D-Bey filed, pro se, an additional supplemental memorandum in support of his motion to withdraw his guilty pleas. He requested that the trial court permit him to "include the allegations" that his guilty pleas were not knowing, intelligent and voluntary because trial counsel had failed to "explore defenses related to [his] medical records, such as insanity, blackout and otherwise" (and D-Bey was "unaware he might have otherwise been able to defend against the charges") and because attempted domestic violence was "not a cognizable offen[s]e in Ohio." He also claimed that trial counsel's failure to present his mental health records to the trial court "prevented the court from making necessary referrals to services," including a referral to the mental health docket and "competency referral." Finally, he asserted that he had "no idea" when he was entering his guilty pleas that the state could refer to "the 'Details of Arrest' from a dismissed charge" during sentencing and argued that this was a "violat[ion] [of] the laws that are in place to protect the defendant['s] rights." In support of his claims, D-Bey attached a Cleveland Division of Police case information report related to the incident.

{¶ 25} On March 12, 2020, the trial court denied D-Bey's motion to withdraw his guilty pleas without a hearing. On March 26, 2020, D-Bey filed a motion with this court seeking an order compelling the trial court to correct its journal entry imposing court costs. This court denied the motion. The court stated that the trial court's inclusion of costs in its sentencing journal entry was "not jurisdictional," that "[t]he trial court[,] by imposing the costs again on remand[,]

may find the costs appropriate" and that D-Bey could address the issue in his appellate brief. On May 12, 2020, with leave of court, D-Bey filed an amended notice of appeal that included the trial court's denial of his motion to withdraw his guilty pleas.

{¶ 26} D-Bey raises the following five assignments of error for review:

I.  Appellant's entire plea and sentence is unconstitutional and must be vacated where appellant entered a guilty plea to attempted domestic violence a non-cognizable offense in the state of Ohio and appellant's trial counsel was further ineffective in counseling appellant to plead to a nonexistent crime.

II. The entry of judgment for costs of the prosecution must be vacated where court costs were not ordered at the oral sentencing hearing or at any time thereafter on the record.

III. The trial court erred when it failed to order a mental health evaluation of appellant and trial counsel was ineffective and caused appellant's guilty pleas to be improperly entered without evaluating appellant's mental health, available programs and possible defenses.

IV. The trial court erred when it denied appellant's postconviction motion to withdraw guilty plea and did so absent an evidentiary hearing.

V.  The sentence imposed upon appellant is excessive under the facts on record and must be modified or vacated and remanded and [trial] counsel was ineffective in failing to provide mitigating mental health information to be considered by the trial court in issuing sentence.

{¶ 27} For ease of discussion, we address D-Bey's assignments of error out of order and together where appropriate.

**Law and Analysis**

**Guilty Plea to "Nonexistent" Offense**

{¶ 28} In his first assignment of error, D-Bey contends that his guilty plea to attempted domestic violence was "unconstitutional" and must be vacated because attempted domestic violence is not a cognizable offense under Ohio law. He further claims that he was denied the effective assistance of counsel based on trial counsel "counseling [D-Bey] to plead to a nonexistent crime." These arguments are meritless.

**Ineffective Assistance of Counsel**

{¶ 29} A criminal defendant has the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Sixth Amendment to the United States Constitution guarantees a defendant the effective assistance of counsel at all ""critical stages of a criminal proceeding," including when he or she enters a guilty plea."" *State v. Romero*, 156 Ohio St.3d 468, 2019-Ohio-1839, 129 N.E.3d 404, ¶ 14, quoting *Lee v. United States*, 582 U.S. __, 137 S.Ct. 1958, 1964, 198 L.Ed.2d 476 (2017), quoting *Lafler v. Cooper*, 566 U.S. 156, 165, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012); *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). As a general matter, to establish ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the outcome

would have been different. *Strickland* at 687-688, 694; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

{¶ 30} A claim of ineffective assistance of counsel is waived by a guilty plea, except to the extent that the ineffective assistance of counsel caused the defendant's plea to be less than knowing, intelligent and voluntary. *State v. Williams*, 8th Dist. Cuyahoga No. 100459, 2014-Ohio-3415, ¶ 11, citing *State v. Spates*, 64 Ohio St.3d 269, 272, 595 N.E.2d 351 (1992). Accordingly, where a defendant has entered a guilty plea, the defendant can prevail on an ineffective assistance of counsel claim only by demonstrating that there is a reasonable probability that, but for counsel's deficient performance, he would not have pled guilty to the offenses at issue and would have instead insisted on going to trial. *State v. Vinson*, 2016-Ohio-7604, 73 N.E.3d 1025, ¶ 30 (8th Dist.); *State v. Xie*, 62 Ohio St.3d 521, 524, 584 N.E.2d 715 (1992); *Hill* at 59.

{¶ 31} In Ohio, every properly licensed attorney is presumed to be competent. *State v. Black*, 8th Dist. Cuyahoga No. 108001, 2019-Ohio-4977, ¶ 35, citing *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Thus, in evaluating counsel's performance on a claim of ineffective assistance of counsel, the court must give great deference to counsel's performance and "indulge a strong presumption" that counsel's performance "falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d

674; *see also State v. Powell*, 2019-Ohio-4345, 134 N.E.3d 1270, ¶ 69 (8th Dist.) ("'A reviewing court will strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"), quoting *State v. Pawlak*, 8th Dist. Cuyahoga No. 99555, 2014-Ohio-2175, ¶ 69.

{¶ 32} To constitute ineffective assistance of counsel, the errors complained of must amount to "'a substantial violation of * * * defense counsel's essential duties to his client.'" *Bradley*, 42 Ohio St.3d at 141-142, 538 N.E.2d 373, quoting *State v. Lytle*, 48 Ohio St.2d 391, 396, 358 N.E.2d 623 (1976), *vacated in part on other grounds*, 438 U.S. 910 (1978). Tactical or strategic decisions do not generally constitute ineffective assistance of counsel. *See, e.g., Black* at ¶ 35; *State v. Foster*, 8th Dist. Cuyahoga No. 93391, 2010-Ohio-3186, ¶ 23. Reviewing courts "will ordinarily refrain from second-guessing strategic decisions" by trial counsel — even where trial counsel's strategy was "questionable" or "debatable" or, in hindsight, it looks like a better strategy was available or other counsel would have defended against the charges differently. *State v. Myers*, 97 Ohio St.3d 335, 2002-Ohio-6658, 780 N.E.2d 186, ¶ 152; *State v. Ford*, 8th Dist. Cuyahoga No. 105865, 2018-Ohio-3563, ¶ 34; *State v. Quinones*, 8th Dist. Cuyahoga No. 100928, 2014-Ohio-5544, ¶ 25.

### Invited Error

{¶ 33} D-Bey pled guilty to attempted domestic violence in violation of R.C. 2923.02 and 2919.25(A). R.C. 2919.25(A) states: "No person shall knowingly cause

or attempt to cause physical harm to a family or household member." D-Bey contends that because "attempt" is included as an element of the offense of domestic violence, it was "error to add the general attempt statute to the offense." He further contends that because this "result[ed] in a conviction for a crime that does not exist," his guilty plea and sentence must be vacated.

{¶ 34} The record reflects that D-Bey accepted the state's plea offer and knowingly, intelligently and voluntarily pled guilty to the charges at issue. To now challenge his guilty plea, after he received the benefit of the negotiated plea bargain, on the basis that it involved a nonexistent offense, is invited error. *See, e.g., State v. Robinson*, 8th Dist. Cuyahoga No. 107598, 2019-Ohio-2330, ¶ 9, 12; *State v. Brawley*, 8th Dist. Cuyahoga No. 79705, 2002-Ohio-3115, ¶ 6, 20 (defendant's claim that it was "legally impossible" to be charged with offense to which he pled guilty did not warrant withdrawal of his negotiated guilty plea because any error was invited error); *State v. Lester*, 8th Dist. Cuyahoga No. 106850, 2018-Ohio-4893, ¶ 8-11 (although attempted involuntary manslaughter is a nonexistent crime in Ohio, defendant could not seek to set aside his conviction based on a claim that counsel was ineffective by allowing him to plead guilty to the nonexistent offense where defendant negotiated his plea to it with the state); *see also State v. Toms,* 2d Dist. Clark No. 2000 CA 64, 2001 Ohio App. LEXIS 3944, 3-6 (Sept. 7, 2001) (where defendant negotiated guilty plea to attempted involuntary manslaughter, any error by the trial court in accepting the plea was invited error and did not warrant reversal of defendant's conviction); *State v. Wickham*, 5th Dist. Muskingum No. CA 76-40,

1977 Ohio App. LEXIS 10210, 4-10 (Sept. 28, 1977) (defendant entering a negotiated guilty plea to attempted involuntary manslaughter, even if a nonexistent offense, was not reversible error); *cf. State v. Robinson*, 8th Dist. Cuyahoga No. 107598, 2020-Ohio-98, ¶ 12 ("[I]t must be noted that this court, as well as numerous other courts, have affirmed convictions based on guilty pleas to offenses the state could not prove where the defendant knowingly, intelligently, and voluntarily entered a guilty plea as part of a 'negotiated plea agreement.'").

{¶ 35} Under the invited error doctrine, "'a party will not be permitted to take advantage of an error that he himself invited or induced the trial court to make.'" *State v. Franks,* 8th Dist. Cuyahoga No. 103682, 2016-Ohio-5241, ¶ 8, quoting *State ex rel. The V Cos. v. Marshall*, 81 Ohio St.3d 467, 471, 692 N.E.2d 198 (1998). As this court explained in *Lester*, "the 'negotiated guilty plea * * * has consistently been given judicial approval as both a means of moving heavy criminal dockets and hopefully as the first step toward the defendant's rehabilitation.'" *Lester* at ¶ 9, quoting *Wickham* at 5. "[B]ecause the 'criminal justice system and the defendant stand to gain by an enlightened use of the negotiated plea system,'" a defendant who negotiated a guilty plea to a nonexistent offense "cannot now complain that it should be set aside." *Lester* at ¶ 10-11, quoting *Wickham* at 6.[2]

{¶ 36} There is nothing in the record to support D-Bey's claim that his trial counsel failed to properly advise him regarding the offenses to which D-Bey pled

---

[2] Because D-Bey invited any error the trial court may have made in accepting his guilty plea to the offense, we do not address the issue of whether attempted domestic violence is a "nonexistent offense."

guilty. Further, D-Bey has not shown that he was prejudiced by counsel's alleged failure to advise him that he was pleading guilty to a "nonexistent" offense and that, if he had known this, he would not have pled guilty to the offense and would have, instead, insisted upon going to trial. With the inclusion of the attempt statute in amended Count 3, that charge was reduced from a fourth-degree felony (as originally indicted) to a fifth-degree felony. Further, as a result of his negotiated guilty pleas, two additional counts were dismissed. D-Bey's first assignment of error is overruled.

### Consideration of D-Bey's Mental Health

{¶ 37} In his third and fifth assignments of error, D-Bey asserts that he has "a significant history of mental illness" that was not properly "brought to the attention of the trial court" prior to sentencing. Specifically, D-Bey contends that the trial court erred in failing to order a mental health evaluation before accepting his guilty pleas and that his defense counsel was ineffective for (1) failing to investigate D-Bey's mental health and request a transfer to the mental health docket, (2) failing to "explore defenses such as sanity and blackout" and (3) failing to provide "mitigating mental health information" to the trial court for consideration during sentencing. Once again, D-Bey's arguments are meritless. Simply because D-Bey may have suffered from mental health issues does not mean he was not competent to enter a guilty plea, that he was not sane or otherwise not responsible for his actions at the time he committed the offenses at issue or that his case should have been transferred to the mental health docket.

## Trial Court's Failure to Order a Mental Health Evaluation

{¶ 38} D-Bey does not specify what type of mental evaluation he contends the trial court should have ordered in this case before accepting his guilty pleas. R.C. 2945.371(A) provides, in relevant part:

> If the issue of a defendant's competence to stand trial is raised or if a defendant enters a plea of not guilty by reason of insanity, the court may order one or more evaluations of the defendant's present mental condition or, in the case of a plea of not guilty by reason of insanity, of the defendant's mental condition at the time of the offense charged.

{¶ 39} The conviction of a defendant who is not competent to enter a plea violates due process of law. *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 155, citing *Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975) ("It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial."), and *State v. Berry*, 72 Ohio St.3d 354, 359, 650 N.E.2d 433 (1995) ("Fundamental principles of due process require that a criminal defendant who is legally incompetent shall not be subjected to trial."). The competence required to enter a guilty plea is the same as the competence required to stand trial. *State v. Minifee*, 8th Dist. Cuyahoga No. 108331, 2019-Ohio-4464, ¶ 12, citing *State v. Mink*, 101 Ohio St.3d 350, 2004-Ohio-1580, 805 N.E.2d 1064, ¶ 57; *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 56. The defendant must have "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding'" and must have "'a rational as

well as factual understanding of the proceedings against him.'" *Montgomery* at ¶ 56, quoting *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); *Minifee* at ¶ 12.

{¶ 40} A defendant is presumed to be competent unless it is demonstrated by a preponderance of the evidence that the defendant is incapable of understanding the nature and objective of the proceedings against him or her or is incapable of assisting in his or her defense. R.C. 2945.37(G); *see also State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 45 ("A defendant is presumed to be competent to stand trial, and the burden is on the defendant to prove by a preponderance of the evidence that he is not competent."); *State v. Collins*, 4th Dist. Lawrence No. 18CA11, 2019-Ohio-3428, ¶ 8 ("'[I]n the absence of evidence to the contrary, a criminal defendant is rebuttably presumed competent to enter a guilty plea.'"), quoting *State v. Pigge*, 4th Dist. Ross No. 09CA3136, 2010-Ohio-6541, ¶ 28.

{¶ 41} A defendant is not incompetent to plead guilty solely because he suffers from a mental illness. *State v. McMillan*, 2017-Ohio-8872, 100 N.E.3d 1222, ¶ 29 (8th Dist.), citing *State v. Calabrese*, 8th Dist. Cuyahoga No. 104151, 2017-Ohio-7316, ¶ 16. A defendant suffering from a mental illness may still possess the ability to understand the charges and proceedings against him or her and be able to assist in his or her defense. Likewise, a defendant suffering from a mental illness may enter a knowing, intelligent and voluntary guilty plea. *See, e.g., State v. Vrabel*, 99 Ohio St.3d 184, 2003-Ohio-3193, 790 N.E.2d 303, ¶ 29 ("'Incompetency must not be equated with mere mental or emotional instability or even with outright

insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel.'"), quoting *State v. Bock*, 28 Ohio St.3d 108, 110, 502 N.E.2d 1016 (1986); *State v. Hawkins*, 8th Dist. Cuyahoga No. 108057, 2019-Ohio-4162, ¶ 17 ("'[A] defendant's emotional or mental instability does not establish incompetence for the purpose of negating a plea, which was otherwise voluntarily, knowingly, and intelligently made.'"), quoting *State v. Prettyman*, 8th Dist. Cuyahoga No. 79291, 2002 Ohio App. LEXIS 1112, 4-5 (Mar. 14, 2002); *State v. Walker*, 8th Dist. Cuyahoga No. 65794, 1994 Ohio App. LEXIS 4450, 5 (Sept. 29, 1994) ("A defendant may be mentally unstable and still be capable of understanding the charges against him and entering a plea in a knowing, intelligent, and voluntary manner."); *State v. Swift*, 86 Ohio App.3d 407, 411, 621 N.E.2d 513 (11th Dist.1993) (defendant suffering from depression was competent to enter guilty plea). The test for competency focuses entirely on the defendant's ability to understand the meaning of the proceedings against him or her and the defendant's ability to assist in his or her own defense, which can be satisfied regardless of the defendant's mental health. *McMillan* at ¶ 29.

{¶ 42} Here, no issue was ever raised below as to D-Bey's competency to enter a guilty plea or as to his sanity at the time he committed the offenses at issue, and there is nothing in the record to suggest that D-Bey exhibited any outward signs of incompetency at any time relevant to this appeal. There is no indication in the record that D-Bey was confused or that any mental condition D-Bey may have had

precluded him from understanding the nature and objective of the proceedings against him, in assisting in his defense or in otherwise entering knowing, intelligent and voluntary guilty pleas.

{¶ 43} To the contrary, the record is replete with evidence that D-Bey was competent to enter and, in fact, entered knowing, intelligent and voluntary guilty pleas. Our review of the transcript from the change-of-plea hearing shows that D-Bey had an understanding of the criminal proceedings against him and was assisting in his defense. The record shows that D-Bey was able to clearly and effectively communicate with the trial court and his counsel. Throughout the proceedings, D-Bey provided reasonable, informed responses to inquiries by the trial court that exhibited D-Bey's understanding of the legal process, the charges against him and the consequences of his guilty pleas.

{¶ 44} Accordingly, we find no reversible error in the trial court's failure to order a mental evaluation before accepting D-Bey's guilty pleas. *Cf. State v. Taylor*, 2d Dist. Montgomery No. 28463, 2020-Ohio-3481, ¶ 58 (trial court did not err in finding defendant competent to stand trial without ordering a psychological evaluation where there was no evidence that defendant did not understand the nature of the proceedings or that he could not assist defense counsel, the transcript of the competency hearing established that defendant was articulate and knowledgeable of the charges he faced and he had preexisting knowledge and exposure to the criminal legal system).

**Trial Counsel's Alleged Failure to Raise D-Bey's Mental Health Issues and Provide Mental Health Information to the Trial Court**

{¶ 45} With respect to his claims of ineffective assistance of counsel, D-Bey asserts that defense counsel "was aware from the time he began representing [D-Bey] that there was a mental health aspect" to D-Bey's commission of the offenses at issue, pointing to statements made by defense counsel at the sentencing hearing that when he first interacted with D-Bey, D-Bey was in "a terrible mental state" and "sobbing."

{¶ 46} D-Bey contends that his "significant mental health issues" warranted "far more investigation" than a request for a mitigation of penalty report after he entered his guilty pleas. He contends that, "at a minimum," trial counsel should have requested that his case be transferred to the "mental health court" and that by "[w]aiting until after [his] plea to bring up his mental health issues" and failing to provide his "mental health records and reports" to the trial court, defense counsel "fell below a reasonable level or representation," resulting in prejudice to D-Bey, "who could have asserted meritorious defenses or been adjudicated by the proper mental health court." D-Bey further contends that if trial counsel had presented his "mental health reports" to the trial court before sentencing, those reports "coupled with the victim's statements regarding his good character," "would have resulted in a sentence aimed to treat [D-Bey] rather than simply impose prison."

{¶ 47} In support of his contentions, D-Bey refers to Dr. Litwin's "psychological evaluation." He contends that this report shows that D-Bey's actions

were "not under his control" and that "his sanity at the time of the offense should be questioned." He further contends the report "raises the issue of the blackout defense caused by PTSD" and shows that D-Bey should have been "transferred to and treated by the mental health court." As stated above, however, Dr. Litwin's report resulted from a "refer[al] for evaluation to help with vocational planning." In his report, Dr. Litwin offers his opinions regarding the extent to which D-Bey had the physical, intellectual and emotional functionality to obtain a commercial driver's license and become a truck driver or to work as a crane operator. Dr. Litwin's report does not reflect a full, general psychological or psychiatric evaluation. Further, Dr. Litwin's report was dated December 4, 2018 — six months prior to the incident at issue. It, therefore, could not have addressed D-Bey's mental state at the time of the May 3, 2019 incident or at the time he entered his guilty pleas on August 5, 2019.

{¶ 48} There is nothing in the record to suggest that this case was eligible for transfer to the mental health docket. Loc.R. 30.1 of the Court of Common Pleas of Cuyahoga County, General Division ("Loc.R. 30.1") governs assignment of criminal cases to the court's mental health and developmental disabilities docket. Under Loc.R. 30.1(A), cases involving defendants with "a confirmed severe mental illness with a psychotic feature or developmental disabilities, as determined by the Court's guidelines" are eligible for assignment or transfer to the court's mental health and developmental disabilities ("MHDD") docket. Loc.R. 30.1(C)(2)(a) further provides, in relevant part: "In cases where it is determined after assignment to a non-MHDD judge that the defendant qualifies for the MHDD docket, the assigned

judge may apply to the Administrative Judge for transfer of the case to the MHDD docket."

{¶ 49} Because there is nothing in the record to suggest that D-Bey "qualifie[d] for the MHDD docket," defense counsel was not deficient for failing to request that the case be transferred to the MHDD.

{¶ 50} Likewise, there is nothing in the record to support D-Bey's claims that he had a potential "blackout" or insanity defense, that defense counsel failed to properly investigate his mental health or any available defenses or that he would not have entered his guilty pleas had defense counsel properly investigated such defenses. The fact that D-Bey was distraught and remorseful when he first interacted with defense counsel does not mean that he was not sane at the time he committed the offenses at issue or that he lacked the capacity to assist in his defense and enter knowing, intelligent and voluntary guilty pleas at the change-of-plea hearing.

{¶ 51} Although D-Bey was admittedly "heavily intoxicated" at the time of the incident, there is nothing in the record to support his claim that he was insane or that he had experienced a "blackout * * * caused by PTSD" during the incident. At the sentencing hearing, D-Bey discussed the events of May 3, 2019 at length — including his actions in obtaining a gun from his cousin's vehicle — and disputing the version of events set forth in the police report.

{¶ 52} Based on the record before us, it is unclear whether defense counsel provided copies of D-Bey's mental health records to the trial court prior to

sentencing. As stated above, at the change-of-plea hearing, defense counsel stated that he would "bring documentation to verify" D-Bey's mental health diagnoses and treatment. There was no discussion of the issue on the record at the sentencing hearing. However, even if defense counsel had failed to provide that documentation to the trial court, it is clear that the trial court was aware of D-Bey's mental health issues at the time of sentencing. The PSI included specific information regarding D-Bey's history of treatment for mental illness, diagnoses and medications. In addition, the trial court heard from D-Bey, R.S. and defense counsel at the sentencing hearing regarding D-Bey's mental health issues and treatment. D-Bey has not shown that he was prejudiced by defense counsel's alleged failure to provided additional or different information to the trial court regarding his mental health issues prior to sentencing. As discussed in greater detail below, the trial court made it clear at the sentencing hearing that its decision to impose the prison sentences in this case was based primarily on D-Bey's significant criminal history.

{¶ 53} D-Bey's third assignment of error is overruled.

**Motion to Withdraw Guilty Plea**

{¶ 54} In his fourth assignment of error, D-Bey contends that the trial court abused its discretion in denying his motion to vacate his guilty pleas without an evidentiary hearing.

{¶ 55} A motion to withdraw a guilty plea is governed by Crim.R. 32.1. Crim.R. 32.1 provides: "A motion to withdraw a plea of guilty * * * may be made only before sentence is imposed; but to correct manifest injustice the court after sentence

may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." The defendant bears the burden of establishing the existence of "manifest injustice." *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph one of the syllabus. Manifest injustice is "a clear or openly unjust act," *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208, 699 N.E.2d 83 (1998), "that is evidenced by 'an extraordinary and fundamental flaw in the plea proceeding,'" *State v. McElroy*, 8th Dist. Cuyahoga Nos. 104639, 104640 and 104641, 2017-Ohio-1049, ¶ 30, quoting *State v. Hamilton*, 8th Dist. Cuyahoga No. 90141, 2008-Ohio-455, ¶ 8; *see also Vinson*, 2016-Ohio-7604, 73 N.E.3d 1025, at ¶ 41; *State v. Stovall*, 8th Dist. Cuyahoga No. 104787, 2017-Ohio-2661, ¶ 17 ("'Manifest injustice relates to some fundamental flaw in the proceedings which result[s] in a miscarriage of justice or is inconsistent with the demands of due process.'"), quoting *State v. Williams*, 10th Dist. Franklin No. 03AP-1214, 2004-Ohio-6123, ¶ 5. As such, the postsentence withdrawal of a guilty plea is warranted "only in extraordinary cases." *State v. Rodriguez*, 8th Dist. Cuyahoga No. 103640, 2016-Ohio-5239, ¶ 22, citing *Smith*, 49 Ohio St.2d at 264, 361 N.E.2d 1324.

{¶ 56} The requisite showing of manifest injustice must be based on specific facts in the record or supplied through affidavits submitted with the motion. *See, e.g., State v. Geraci*, 8th Dist. Cuyahoga Nos. 101946 and 101947, 2015-Ohio-2699, ¶ 10.

{¶ 57} A trial court is not required to hold a hearing on every postsentence motion to withdraw a guilty plea. *See, e.g., State v. Norman*, 8th Dist. Cuyahoga

No. 105218, 2018-Ohio-2929, ¶ 16; *State v. Vihtelic*, 8th Dist. Cuyahoga No. 105381, 2017-Ohio-5818, ¶ 11. However, "'[a] hearing is required * * * if the facts alleged by the defendant, accepted as true, would require that the defendant be allowed to withdraw the plea.'" *Norman* at ¶ 16, quoting *Vihtelic* at ¶ 11; *see also State v. Tringelof*, 12th Dist. Clermont Nos. CA2017-03-015 and CA2017-03-016, 2017-Ohio-7657, ¶ 11 ("'A defendant must establish a reasonable likelihood that a withdrawal of his plea is necessary to correct a manifest injustice before a court must hold an evidentiary hearing on his motion.'"), quoting *State v. Williams*, 12th Dist. Warren No. CA2009-03-032, 2009-Ohio-6240, ¶ 14.

{¶ 58} We review a trial court's decision to deny a defendant's postsentence motion to withdraw a guilty plea under an abuse of discretion standard. *See, e.g., Vinson*, 2016-Ohio-7604, 73 N.E.3d 1025, at ¶ 42, citing *Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324, at paragraph two of the syllabus. Likewise, we review a trial court's decision whether to hold a hearing on a postsentence motion to withdraw a guilty plea for an abuse of discretion. *See, e.g., State v. Grant*, 8th Dist. Cuyahoga No. 107499, 2019-Ohio-796, ¶ 13.

{¶ 59} D-Bey argues that withdrawal of his guilty pleas was necessary to correct manifest injustice based on trial counsel's (1) failure to investigate his mental health issues and possible defenses and (2) failure to present information regarding his mental health, including Dr. Litwin's report, to the trial court before D-Bey entered his guilty pleas. D-Bey contends that that he was "unaware * * * what evaluations and programs might have been available to him prior to entering his

guilty plea[s]" and suggests that defense counsel misled him regarding the extent to which the trial court would consider his mental health issues during sentencing. D-Bey asserts that if his defense counsel had investigated his mental health, "properly advised him" regarding available defenses, "petitioned the court" for a mental health evaluation or transfer to the mental health docket and made Dr. Litwin's report available to the trial court, he "would not have been likely to consider entering a guilty plea absent further investigation" and that his guilty pleas are, therefore, "unjust" and "must be withdrawn."

{¶ 60} Under certain circumstances, ineffective assistance of counsel can constitute a manifest injustice warranting a withdrawal of a guilty plea. *See, e.g., State v. Montgomery*, 8th Dist. Cuyahoga No. 103398, 2016-Ohio-2943, ¶ 4. D-Bey, however, has not shown any reasonable likelihood that this is such a case.

{¶ 61} D-Bey submitted no affidavits or any other relevant evidentiary materials with his motion to withdraw his guilty pleas and did not point to any specific facts in the record that could otherwise support his claim of manifest injustice. D-Bey's motion to withdraw his guilty pleas (and his appellate brief) consist of little more than conclusory, self-serving allegations for which there is little or no support in the record. As detailed above, D-Bey has not shown that there was any basis in the record for trial counsel to request a mental health evaluation of D-Bey, that D-Bey qualified for transfer to the MHDD docket or that any potential defenses applied that would have negated D-Bey's culpability for the offenses at issue. Further, there is no evidence in the record relating to any discussions D-Bey

allegedly had with defense counsel regarding his mental health, the impact of his mental health on his culpability or the extent to which the trial court would consider D-Bey's mental health in determining an appropriate sentence. In short, there is nothing in the record that suggests that D-Bey's mental condition impacted his guilty pleas or that defense counsel provided constitutionally ineffective assistance in counseling him to enter those guilty pleas. Conclusory allegations and unsubstantiated assertions are not sufficient to demonstrate a manifest injustice or to warrant a hearing on a motion to withdraw a guilty plea. *See, e.g., State v. Britton*, 8th Dist. Cuyahoga No. 98158, 2013-Ohio-99, ¶ 19, 21; *State v. Johnson*, 12th Dist. Butler Nos. CA2010-12-327 and CA2011-02-019, 2011-Ohio-3015, ¶ 13. The allegedly harsh nature of the sentence D-Bey ultimately received "does not constitute grounds for withdrawing the plea that preceded it." *State v. Rollins*, 2d Dist. Champaign No. 2015-CA-7, 2016-Ohio-141, ¶ 7.

{¶ 62} Based on the record before us, we cannot say that the trial court abused its discretion in denying D-Bey's motion to withdraw his guilty pleas without an evidentiary hearing. The record is devoid of the type of extraordinary circumstances that would necessitate allowing D-Bey to withdraw his guilty pleas. D-Bey's fourth assignment of error is overruled.

**D-Bey's Sentences**

{¶ 63} In his fifth assignment of error, D-Bey challenges his sentences. He contends that the record "does not support the sentencing court's findings" and that a "maximum prison sentence was not warranted under the applicable sentencing

considerations and facts at issue." He requests that this court modify his sentences or that his sentences be vacated and the case remanded to the trial court for resentencing.

{¶ 64} We review felony sentences under the standard set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1, 21. R.C. 2953.08(G)(2) provides that when reviewing felony sentences, the appellate court "shall review the record, including the findings underlying the sentence * * * given by the sentencing court" and that it "may increase, reduce, or otherwise modify a sentence * * * or may vacate the sentence and remand the matter to the sentencing court for resentencing" only if it "clearly and convincingly finds" that (1) "the record does not support the sentencing court's findings" under particular statutory provisions that do not apply here or (2) "the sentence is otherwise contrary to law."

{¶ 65} A sentence is "contrary to law" if it falls outside the statutory range for the offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12 when sentencing a defendant for a felony offense. *See, e.g., State v. Clay*, 8th Dist. Cuyahoga No. 108500, 2020-Ohio-1499, ¶ 26, citing *State v. Pawlak*, 8th Dist. Cuyahoga No. 103444, 2016-Ohio-5926, ¶ 58. A sentence is not "otherwise contrary to law" simply because the record does not support the sentence. *State v. Jones*, Slip Opinion No. 2020-Ohio-6729, ¶ 32 ("[A]n appellate court's determination that the record does not support a sentence does not equate to a

determination that the sentence is 'otherwise contrary to law' as that term is used in R.C. 2953.08(G)(2)(b).").

{¶ 66} Pursuant to R.C. 2929.11, a sentence imposed for a felony shall be "reasonably calculated" to achieve "three overriding purposes of felony sentencing" — (1) to protect the public from future crime by the offender and others, (2) to punish the offender and (3) to promote the effective rehabilitation of the offender — "using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A), (B). In addition, the sentence imposed "shall be commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim" and "consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

{¶ 67} Unless otherwise required by R.C. 2929.13 or 2929.14, a sentencing court imposing a felony sentence "has discretion to determine the most effective way to comply" with these purposes and principles of sentencing. R.C. 2929.12(A). R.C. 2929.12 sets forth a nonexhaustive list of factors the trial court must consider when imposing a sentence. R.C. 2929.12(A) provides that a court imposing a sentence on a felony offender "shall consider" the factors set forth in R.C. 2929.12(B) and (C) "relating to the seriousness of the conduct," the factors provided in R.C. 2929.12(D) and (E) "relating to the likelihood of the offender's recidivism" and the factors set forth in R.C. 2929.12(F) pertaining to the offender's military service. "[I]n addition,"

the trial court "may consider any other factors that are relevant to achieving those purposes and principles of sentencing." R.C. 2929.12(A).

{¶ 68} D-Bey does not dispute that his prison sentences were within the statutory range. Rather, he contends that the trial court "failed to give any consideration to [D-Bey's] mental health when sentencing him" and that his sentences were "excessive" given his claim that his actions were "caused by * * * an episode of mental illness." In support of his contention, D-Bey notes that the trial court "appeared to make no reference" to his mental health, to R.S.'s statement that "he was a benefit to her family" and to the progress D-Bey had made since receiving mental health services when sentencing him — focusing instead on his prior criminal history.

{¶ 69} Although the trial court must consider the purposes and principles of sentencing set forth in R.C. 2929.11 and the relevant sentencing factors listed in R.C. 2929.12 when sentencing a defendant on a felony, R.C. 2929.11 and 2929.12 are not "fact-finding statutes." *See, e.g., State v. Black*, 8th Dist. Cuyahoga No. 108551, 2020-Ohio-3117, ¶ 13; *State v. White*, 8th Dist. Cuyahoga No. 106580, 2018-Ohio-3414, ¶ 9. The trial court is not required to use particular language, make any specific findings on the record regarding its consideration of R.C. 2929.11 and 2929.12 or give specific reasons for imposing more than the minimum sentence. *State v. Herron*, 8th Dist. Cuyahoga No. 108775, 2020-Ohio-1620, ¶ 12; *Black* at ¶ 13; *State v. Gaines*, 8th Dist. Cuyahoga No. 103476, 2016-Ohio-4863, ¶ 11.

{¶ 70} A trial court's statement in its sentencing journal entry that it considered the required sentencing purposes, principles and factors, without more, is sufficient to fulfill a trial court's obligations under R.C. 2929.11 and 2929.12. *See, e.g., Herron* at ¶ 13; *White* at ¶ 9; *State v. Kronenberg*, 8th Dist. Cuyahoga No. 101403, 2015-Ohio-1020, ¶ 27 ("[T]his court has consistently recognized that a trial court's statement in the journal entry that it considered the required statutory factors, without more, is sufficient to fulfill its obligations under the sentencing statutes.").

{¶ 71} Further, "'[c]onsideration of the factors is presumed unless the defendant affirmatively shows otherwise.'" *State v. Cooke*, 8th Dist. Cuyahoga No. 108824, 2020-Ohio-2725, ¶ 64, quoting *State v. Seith*, 8th Dist. Cuyahoga No. 104510, 2016-Ohio-8302, ¶ 12; *see also State v. Dawson*, 11th Dist. Lake No. 2015-L-109, 2016-Ohio-2800, ¶ 15 ("Absent evidence to the contrary, a reviewing court will presume the trial court considered all appropriate sentencing factors, even if the record is silent.").

{¶ 72} In this case, the trial court expressly stated in its sentencing journal entry that it had "considered all required factors of the law" and "finds that prison is consistent with the purpose of R.C. 2929.11." *See, e.g., State v. Williams*, 8th Dist. Cuyahoga No. 100042, 2014-Ohio-1618, ¶ 17 (observing that "[t]his court has refused to find that a sentence is contrary to law when the sentence is in the permissible range, and the court's journal entry states that it 'considered all required factors of the law' and 'finds that prison is consistent with the purposes of R.C.

2929.11'"). The trial judge also expressly stated, at the outset of the sentencing hearing, that he had received and reviewed the PSI, which included information regarding D-Bey's mental health treatment, diagnoses and medications, prior to the hearing.

{¶ 73} Although it was not required to do so, at the sentencing hearing, the trial court explained its rationale for the sentences it imposed as follows:

> Mr. D-Bey, your criminal history is significant for a variety of pretty bad times. Extortion is not something we see every day. Menacing is a particularly troubling crime. In this case, you committed harm to a child with developmental disabilities. You're 52 years of age. I don't see you changing your ways. I considered the seriousness and recidivism factors and the purposes and principles per our sentencing statutes.

{¶ 74} D-Bey has not demonstrated that the trial court failed to consider the purposes and principles of sentencing under R.C. 2929.11 or the sentencing factors under R.C. 2929.12 when sentencing him. The trial court was not required to demonstrate how its sentence served each of the purposes and principles of sentencing or to identify or explain its evaluation of each relevant sentencing factor in order to comply with R.C. 2929.11 and 2929.12.

{¶ 75} With respect to D-Bey's claims that his prison sentences were "excessive" and not supported by the record, in *Jones*, the Ohio Supreme Court recently held that R.C. 2953.08(G)(2) does not authorize an appellate court to review "whether the record supports the sentence as a whole under R.C 2929.11 and 2929.12." (Emphasis deleted.) Slip Opinion No. 2020-Ohio-6729, at ¶ 30. The court reasoned that R.C. 2953.08(G)(2)(a) "clearly does not provide a basis for an

appellate court to modify or vacate a sentence if it concludes that the record does not support the sentence under R.C. 2929.11 and 2929.12 because * * * R.C. 2929.11 and 2929.12 are not among the statutes listed in the provision" and that R.C. 2953.08(G)(2)(b) "does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12" because a sentence is not "otherwise contrary to law" within the meaning of R.C. 2953.08(G)(2)(b) if it is not supported by the record. *Id.* at ¶ 31-32, 39. The court further indicated that "[n]othing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Id.* at ¶ 42. Accordingly, this court cannot review D-Bey's sentences to determine whether they are "excessive" or otherwise not "supported by the record under R.C. 2929.11 and 2929.12." *Id.* at ¶ 39.

{¶ 76} Even if D-Bey's sentences were subject to such a review, we would find no reversible error. Although D-Bey's mental health was one factor for the trial court to consider in determining an appropriate sentence, there were other factors for the trial court to consider as well, including the relationship between D-Bey and the victim, the victim's age and mental condition and D-Bey's significant history of criminal offenses.[3] *See* R.C. 2929.12. It was based on these factors that the trial

---

[3] At the time of his sentencing, D-Bey was 52. According to the PSI, D-Bey's criminal history included: delinquency adjudications as a juvenile; convictions for drug abuse and drug trafficking in 1990 and 1991; a conviction for attempted extortion in 1996; convictions for burglary, theft, tampering with evidence, falsification, forgery, possession of criminal tools and passing bad checks in multiple cases in 1997; a conviction for

court determined that prison sentences were warranted. The record reflects that the trial court considered the purposes and principles of sentencing under R.C. 2929.11, the relevant sentencing factors under R.C. 2929.12, the PSI and all of the other relevant information presented at (or prior to) the sentencing hearing when imposing a 36-month prison sentence on Count 1 and a concurrent 12-month prison sentence on Count 3, as amended. The trial court complied with its obligations under R.C. 2929.11 and 2929.12, and D-Bey's sentences were not contrary to law. Accordingly, we overrule D-Bey's fifth assignment of error.

**Court Costs**

{¶ 77} In his second assignment of error, D-Bey contends that the trial court erred by ordering him to pay court costs in the sentencing journal entry when it did not impose such costs in open court at the sentencing hearing. The state concedes the error. D-Bey's second assignment of error is sustained. Accordingly, we reverse the trial court to the extent it imposed court costs and remand the matter for the trial court to vacate its imposition of court costs.[4]

{¶ 78} Judgment affirmed in part; reversed in part; remanded.

---

attempted theft in 2004; convictions for breaking and entering, theft and falsification in 2005; a conviction for theft in 2007; a conviction for battery (domestic violence) in 2011; a conviction for menacing in 2013 and a conviction for aggravated assault in 2014. The PSI indicates that D-Bey has a "high" risk for recidivism.

[4] We are aware of the Ohio Supreme Court's decision in *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028. However, due to the particular facts and circumstances in this case, including D-Bey's prior motion to the trial court related to the costs issue and the fact the state concedes the error in this assignment of error, we do not believe D-Bey should be required to file yet another motion in the trial court in order to obtain a waiver of court costs.

It is ordered that appellant and appellee share the costs herein taxed.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
MICHELLE J. SHEEHAN, J., CONCUR