[Cite as *State v. Foster*, 2021-Ohio-3408.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                  CASE NO.  14-20-17

    v.

DEWAYNE FOSTER,                       O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Union County Common Pleas Court
Trial Court No. 2019-CR-0108

Judgment Affirmed

Date of Decision:  September 27, 2021

APPEARANCES:

    *April F. Campbell* for Appellant

    *Raymond Kelly Hamilton* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Dewayne Foster ("Foster"), brings this appeal from the July 16, 2020, judgment of the Union County Common Pleas Court sentencing him to serve eight years in prison after he pled guilty to, and was convicted of, trafficking cocaine in violation of R.C. 2925.03(A)(2), a second degree felony, and tampering with evidence in violation of R.C. 2921.12(A)(1), a third degree felony. On appeal, Foster argues that he was "promised" a six-year prison sentence by the trial court, that the trial court breached its promise, that the trial court improperly failed to record the hearing wherein it made the promised prison sentence, and that the trial court erred by failing to accept Foster's proposed "statement of evidence" under App.R. 9(C).

*Background*

{¶2} On or about January 6, 2019, Foster was the passenger in a vehicle that was observed performing a marked lanes violation on US 33 by a Union County deputy sheriff. After observing the violation, the deputy activated his overhead lights to initiate a traffic stop of the vehicle; however, the vehicle did not stop.

{¶3} According to the driver of the vehicle, Foster was sitting in the passenger seat at the time the deputy activated the cruiser's overhead lights and Foster was talking on the phone. Foster told the person on the other end of his call, "bro, we're getting pulled." (July 16, 2020, Tr. at 5). The person on the phone

purportedly responded, "Ya'll better tell her to go." (*Id.*) Foster then told the driver not to stop for police because he had "too much on him[.]" (Doc. No. 19). Despite being followed by the deputy's cruiser with the lights activated, the vehicle Foster was in continued eastbound at approximately 70 mph.

{¶4} Once the vehicle failed to stop, the deputy following it activated his siren in addition to his overhead lights. In response, the vehicle accelerated upwards of 90 mph and continued onto US 270 South. The vehicle ultimately exited the highway at Tuttle Crossing Boulevard. As the vehicle slowed for a stop sign, Foster jumped out of the passenger-side door and ran. The driver stopped and was apprehended, handcuffed, and placed in the patrol car. A search of the vehicle uncovered in excess of 100 grams of cocaine in three individually wrapped bags, and $381 in currency.

{¶5} On April 12, 2019, Foster was indicted for trafficking cocaine in an amount equal to, or in excess of, one hundred grams in violation of R.C. 2925.03(A)(2), a first degree felony, possession of cocaine in an amount equal to, or in excess of, one hundred grams in violation of R.C. 2925.11(A), a first degree felony, and tampering with evidence in violation of R.C. 2921.12(A)(1), a third degree felony. Foster originally pled not guilty to the charges.

{¶6} Numerous pretrial hearings were held including a suppression hearing and multiple bond hearings. The case was also continued several times and Foster

changed his counsel on multiple occasions. Then, on June 19, 2020, Foster entered into a written, negotiated plea agreement wherein he agreed to plead guilty to the *amended* count of trafficking cocaine as a second degree felony, and tampering with evidence as indicted. As part of the plea agreement the possession of cocaine charge would be dismissed. Further, the plea agreement specifically stated that the parties agreed to argue sentencing. (Doc. No 112).

{¶7} On June 19, 2020, a change-of-plea hearing was held wherein the agreement was announced to the trial court and the plea paperwork was signed in open court. As part of the hearing, the parties reiterated that they would be arguing sentencing in this matter. The trial court advised Foster of the rights he was waving, and informed him of the maximum possible prison terms he was facing. Further, the trial court indicated that it could impose any lawful sentence. Foster indicated that he understood, that there were no other promises made to him beyond what was made in the written agreement, and his pleas were accepted. The trial court determined that Foster's pleas were knowing, intelligent, and voluntary

{¶8} On July 16, 2020, Foster was sentenced to serve eight years in prison on the trafficking cocaine conviction, and a concurrent prison term on the tampering with evidence conviction.[1] After the trial court pronounced the sentence, Foster

---

[1] At the sentencing hearing, the trial court stated, "On count three you're sentenced to prison for a term of 36 months, which is to be served concurrent to amended count one for a total prison term of 8 years." (July 16, 2020, Tr. at 31). However, the trial court's judgment entry, and the later-filed *nunc pro tunc* entry, stated, "On Count 3, the Defendant is sentenced to prison for a term of twenty-four (24) months to be served

protested, claiming that the trial court had actually promised to sentence him to no more than six years in prison at a prior hearing. The state adamantly disagreed that any such promise had been made by the trial court. The trial court did not have any recollection of making such a promise, so the trial court recessed to review recordings of the prior hearings. Following the recess, the trial court indicated that no such promises were made and the sentence would be imposed as had been previously pronounced. A judgment entry memorializing Foster's sentence was filed that same day, July 16, 2020. It is from this judgment that Foster appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**Foster's sentence should be reversed or modified to no more than a six-year sentence, because that is what he was promised by the Court: The trial court's decision to impose an eight-year sentence was a breach of that agreement.**

**Assignment of Error No. 2**
**The trial court's decision to sentence Foster to eight-years was contrary to law.**

**Assignment of Error No. 3**
**The trial court erred in a manner that prejudiced Foster by failing to make a record of Foster's pretrials under Crim.R. 22.**

**Assignment of Error No. 4**
**The trial court committed prejudicial error when it chose not to accept Foster's Statement of Evidence under App.R. 9(C).**

---

concurrent to Amended Count 1." (Doc. No. 116); (Doc. No. 121). We would further note that the "Warrant to Convey" Foster to prison stated, incorrectly, that Foster was found guilty of trafficking and possession of cocaine, both first degree felonies. (Doc. No. 119). While these were the offenses Foster was charged with, they were not the offenses he was convicted of committing.

*First Assignment of Error*

**{¶9}** In his first assignment of error, Foster contends that the trial court "promised" him a six-year prison term, that the purported promise induced him to change his pleas, and that the trial court breached the purported promise by sentencing him to an eight-year prison term.

Relevant Authority

**{¶10}** "[A] plea agreement is a contract, and a breach of that contract is governed by contract law." *State v. Mills*, 2d Dist. Montgomery No. 26619, 2015-Ohio-5385, ¶ 14, citing *State v. Adkins,* 161 Ohio App.3d 114, 2005-Ohio-2577 (4th Dist.). A breach of that contract entitles the non-breaching party to rescission or specific performance. *Id*. citing *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

**{¶11}** Because the trial court generally is not a party to the plea negotiations and the contract itself, it is free to impose a sentence greater than that forming the inducement for the defendant to plead guilty so long as the court forewarns the defendant of the applicable penalties, including the possibility of imposing a greater sentence than that recommended by the prosecutor. *State v. Vari*, 7th Dist. Mahoning No. 07-MA-142, 2010-Ohio-1300, ¶ 24, citing *State v. Martinez,* 7th Dist. Mahoning No. 03MA196, 2004-Ohio-6806, ¶ 8. However, *if* the trial court enters into the plea agreement by making a promise, it becomes a party to the

agreement and is bound thereby. *Vari* at ¶ 24. "A promised sentence is an inducement to plea, and unless given as promised, the plea is not voluntary." *Mills*, at ¶ 14, citing *State v. Gilroy,* 195 Ohio App.3d 173, 2011–Ohio–4163, (2d Dist.).

Analysis

{¶12} At the outset, we note that there was no explicit "promise" made by the trial court to Foster of a six-year prison term documented in the record. Rather, Foster claims that the "promise" must have taken place at a hearing that was not recorded by the trial court. In support of his claim, Foster contends that his defense attorney also recalled the trial court making some statement at a prior hearing regarding the trial court "leaning" toward a six-year prison term. In order to address Foster's claim, we will review the record leading to Foster's protest at the sentencing hearing to place it in the proper context.

{¶13} After Foster was indicted in this case, and he entered his not guilty pleas, the case proceeded through discovery and motion practice. Some of the pretrial hearings were presided over by a visiting judge, including a suppression hearing. Foster's suppression motion was denied by the visiting judge, and the visiting judge also conducted a hearing wherein it was revealed that Foster committed multiple felonies in Columbus while he was on bond in this matter. Regardless, none of the early pretrial hearings contained any statements or promises

by the trial court or the visiting judge of any specific sentence if Foster changed his plea.

{¶14} On February 28, 2020, a pretrial hearing was held on the record wherein the status of the case was discussed. This hearing was not conducted by a visiting judge. At the hearing Foster was appearing with his new counsel, who was either the "third or fourth attorney for Mr. Foster." (Tr. at 3). When the hearing commenced, the prosecutor updated the trial court on the status of the case, indicating that Foster's newest defense counsel was inquiring about potential plea offers. One of Foster's previous attorney's had asked if the most serious charge could be amended to a second degree felony. The state reiterated what it had told Foster's prior attorney by stating that if the charge was reduced to a second degree felony, "it has to be an agreed sentence of eight years." (*Id*. at 4).

{¶15} After some discussion of the maximum penalties Foster was currently facing absent a plea deal, defense counsel stated

> **my client would be interested in some sort of structured deal where he could be eligible to request for judicial release, not asking for any promise. One way of accomplishing that would be to reduce an F-1 to an F-3. And then we have the third count, which is already an F-3. And that would give the Court sufficient sentencing latitude to hang sufficient time over Mr. Foster's head.**

(*Id*. at 6).

{¶16} The prosecution responded that defense counsel's suggestion had been discussed, but

Case No. 14-20-17

> **the State has no interest in that [offer]. I communicated that to
> Mr. Foster's prior counsels. And the reason being is Mr. Foster's
> got an extensive criminal history. He has outstanding charges
> currently in Franklin County. And we're dealing with 151 grams
> of cocaine powder here. * * ***

(*Id.*)

{¶17} After the parties' informed the trial court of the state of the case and

possible negotiations, the following exchange occurred.

> **THE COURT: All right. So ready to set the case for trial then?**
>
> **[PROSECUTOR]: Yes, sir.**
>
> **THE COURT: Okay. So one – one final thought before we do
> that that would substantially satisfy your requests and would also
> satisfy at least some of [defense counsel's] requests would be to –
> to – to plead – for the defendant to plead guilty to an agreed
> sentence related to two F-3's, which would be max consec, which
> would be an agreed sentence of six years. He'd be eligible for
> judicial release in that – he would be eligible for judicial release
> because it would not be a mandatory sentence, but only after
> serving five years of that sentence. * * * So just something to –
> for the two of you to talk about. And I understand that the State's
> not interested. I'm not suggesting that you should be. I'm just –
> I'm just trying to find a way that the two of you could get to a
> point that – a sentence that would be acceptable to both the State
> where you're requesting an eight year sentence and that the
> defendant's requesting, as we've heard on the record. In the event
> that there's prior convictions that relate to the – well, we don't
> need to go there at this point in time. So, [bailiff], do you want to
> set a trial date then.**

(Tr. at 9-10). The hearing concluded and another pretrial hearing was scheduled for

March 26, 2020. However, that hearing was continued to May 21, 2020, due to the

COVID-19 pandemic.

-9-

{¶18} According to an entry filed in the record, a pretrial hearing was held on May 21, 2020, wherein "The Court and counsel discussed the matter off the record." (Doc. No. 110). The entry stated that Foster was present via video. According to the entry, defense counsel was "afforded the opportunity to talk with the Defendant privately via video connection; thereafter he informed the Court that the matter has not been resolved and requested that a further Pretrial be scheduled[.]" (*Id.*) There is no indication from the journal entry that anything at all was done on the record and thus no transcript was produced from this hearing.

{¶19} The next journal entry in the record indicates that a pretrial hearing was held June 5, 2020. The entry stated that Foster was *not* present, and that the trial court and counsel discussed the matter *off the record.* According to the entry, defense counsel requested that a change-of-plea hearing be scheduled for June 19, 2020.

{¶20} On June 19, 2020, Foster entered into a written negotiated plea agreement. The agreement explicitly stated, "I have not been promised anything to enter this plea of guilty other than the State's agreement to amend Count 1 and to dismiss Count 2, and I understand that there is no agreed sentencing recommendation. I understand further that the State and I will argue sentencing and that the court may impose any lawful sentence upon me." (Doc. No. 113). Further, the written plea agreement specified that Foster could be sentenced to maximum

consecutive prison terms, and if he was sentenced to maximum consecutive prison terms he was facing eleven years in prison. The written agreement was signed by Foster, his attorney, the prosecutor, and the trial court.

{¶21} The plea hearing commenced, with defense counsel requesting that the matter proceed to sentencing directly after the change-of-plea. The state opposed, arguing that the prosecution was still unsure of the full extent of Foster's criminal record. The state indicated it would "probably" be arguing for the maximum amount of prison time. Due to the state's objection, the trial court elected not to proceed directly to sentencing following the change-of-plea hearing.

{¶22} During the change-of-plea hearing, the plea agreement was recited to the trial court and the trial court reiterated that the parties would be arguing sentencing. The trial court then conducted a thorough Crim.R. 11 dialogue with Foster. When asked, Foster indicated he was not promised anything beyond what was stated in the plea agreement and he indicated understood that the state would argue sentencing. Further, he indicated that he understood the trial court could impose any lawful sentence upon him. Ultimately, after Foster indicated he understood the agreement and that he understood all the rights he was waiving, Foster's pleas were accepted as knowing, intelligent, and voluntary. Sentencing was set for the following month.

{¶23} Just prior to the sentencing hearing, the state filed a written sentencing memorandum arguing for maximum, consecutive sentences for an aggregate eleven-year prison term. The memorandum addressed various sentencing factors and contended that maximum consecutive prison terms were warranted here.

{¶24} On July 16, 2020, the matter proceeded to the sentencing hearing. As per the written sentencing memorandum, the state argued for maximum consecutive sentences, contending, *inter alia*, that Foster had a significant criminal history. Further, the state noted that while Foster was out on bond on this case, Foster drove away from police officers in a residential chase that eventually involved a police helicopter. This led to multiple felony charges in Franklin County. Finally, the state noted that Foster wrote a letter to the driver of his vehicle in this matter in order to try to get her to claim that the cocaine that was found in the vehicle was hers instead of Foster's.

{¶25} Defense counsel then argued in mitigation of sentence by noting that although federal and state laws regarding drugs were different, the federal sentencing range for the trafficking charge in this matter, with a defendant accepting responsibility, would be between 37 to 46 months. Defense counsel requested a prison sentence in that range.[2] Foster then made a statement on his own behalf,

---

[2] At this time, defense counsel did not make any statements regarding a "promised" sentence.

indicating that treatment and counseling were helping him. He requested that the trial court give him an opportunity to continue his drug abuse treatments.

{¶26} After the parties concluded their statements, the trial court proceeded to sentence Foster. The trial court emphasized Foster's criminal history, his case that occurred in Franklin County while he was on bond in this matter, and the fact that Foster was apparently involved in some type of criminal enterprise based on his phone conversation while in the car. Foster was then sentenced to serve a mandatory eight-year prison term on the trafficking cocaine charge, and a concurrent prison term on the tampering with evidence charge.[3]

{¶27} Foster initially said nothing as his prison terms were announced. The trial court continued pronouncing sentence by going through various advisements regarding post-release control, firearm restrictions, and Foster's right to appeal. However, once the trial court was done sentencing Foster, the following dialogue occurred.

> [DEFENSE COUNSEL]: Your Honor, my client is reminded [sic] me. During one of the discussions – pretrial discussions he was – he was, I think, available remotely through the video conferencing and there was some talk of the Court leaning towards 6 years. As far as the –
>
> THE COURT: I reviewed that. Just so that you know. I made a comment to you and [the prosecutor] on February the 28th that – and I'm not saying I didn't make some other comment some other time. I obviously didn't know about this conduct that occurred

---

[3] Again, the judgment entry differed from the sentencing hearing in the amount of time for the concurrent prison term.

**while he was out on bond, that occurred on November the 1ˢᵗ of 2019. But what I said to you and [the prosecutor] that I'm sure stuck in his head, at least in part, is that when you were not agreeable, he wasn't agreeable. You just expressed that he wasn't agreeable, so I'm not saying that you weren't agreeable. But when we tried to get the case resolved by [the prosecutor's] statement to the Court of – of – that he would agree to an agreed sentence, it would have to be an agreed sentence if it was going to – if he was going to amend from an F-1 to an F-2. I reviewed that transcript before sentencing here today. * * * But you wanted the State to consider two F-3's. And you responded that you thought that there was enough time available – your statement was that you thought that two F-3's would give the State and the Court enough time that they could sentence him to that would be – end up in an appropriate sentence. The – the Prosecutor, of course, was – his response was no. A flat no. I put an exclamation mark behind it. * * * I responded to both of you and the Defendant that I suggested that it might be possible for the State to achieve its goal and for the Defendant to achieve his goal. And I'm not sure that I said it in that way. If the Defendant were to plead guilty to two F-3's, as suggested by you, maximum consec, which would be an agreed sentence of 6 years. And once again, nobody – nobody bit on the court's proposal. But I think that was my comment with regard to 6 years. I'm not saying that I may or may not have said something else at another day. I think Mr. – so you've indicated that I said that when Mr. Foster was attending by way of video. And I am pretty sure that the pretrial that I presided over on February the 28ᵗʰ, that the Defendant was in the courtroom with you on that date, but I might – I might be wrong on that.**

**[DEFENSE COUNSEL]: No. Mr. –**

**[DEFENDANT]: It was in June.**

**[DEFENSE COUNSEL]: Oh. In June. That's right. So, yeah. Mr. Foster was available by video. And there was a discussion under the current plea bargain that the Court was leaning toward 6 years. * * ***

* * *

[DEFENDANT]:  Your Honor, on June, I think, it was 16th, we had a virtual scheduled hearing.  And I asked you specifically, like, you, Judge Fraser.  I said, so if I accept this open plea, I said, what's the most you could give me.  And you said to me in public record, no more than 6 years, your Honor.  That's what you said to me.  And so that was – and I didn't want to take 6 years.  I'm being honest.  And I spoke with my attorney.  He said he thinks this is a good deal.  And that's why I'm here today to accept my punishment.   And now that I've come here to accept my punishment, I'm getting the maximum 8 years on the F-2.  And that's why I was willing to accept the – my actions cause at the end of the day, I have a light at the end of the tunnel.  * * * But on June 16th I looked you in your face on virtual media and you said – I said, Judge Fraser, what am I looking at?  You said, I'm not going to give you no more than 6 years.  I spoke with my attorney.  He said – I asked him, worse case scenario, cause he came to see me at Tri-County.  I said, Dennis, what's the worse case you think this – if Judge Fraser having a bad day, what do you think he going to give me?

THE COURT:  Judge Fraser's not having a bad day.

* * *

I always endeavor to be fair to people.

DEFENDANT:  I'm just – yeah.  I'm just talking to my client – I mean, my attorney, Dennis.  I mean, my attorney, Judge Fraser.  And he said, the worse he'd probably give you is 6 years.  And I said, dang.  And I accepted that cause I know it came from your mouth.  And that's the reason why I stand here before you today, Judge Fraser, cause you told me and I believed you.  * * * So as I sit here today, that's why I'm kind of like, shocked, like, 8 years like you told me out your mouth.  * * * But I stand here before you today and I accepted that plea knowing that the most I would get is 6 years.

THE COURT:  Well, let's take a –

**DEFENDANT: And I understand.**

**[PROSECUTOR]: Listen.**

**DEFENDANT: Do you know what I mean?**

**THE COURT: Hang on – hang on a second. Let's take a five minute recess and let me go back and review what I said. If I said that, I said it. And let me – let me find out what exactly what I said.**

**\* \* \***

[Court recesses for 42 minutes]

**\* \* \***

**THE COURT: The court's reviewed the record, at least, briefly. The record of the pretrial held on 6/5 is – states – it's just a journal entry that states – and you have it, I think, [defense counsel]. It states that discussion was held by – between the Court and counsel off the record. And just indicates that what happened on that day. Nothing further. No mention of what Mr. Foster's contending. Do you [defense counsel] believe that the Court's made some representation of what I would sentence the Defendant to?**

**[DEFENSE COUNSEL]: Yes.**

**THE COURT: You do?**

**[DEFENSE COUNSEL]: Uh-huh.**

**THE COURT: Tell me.**

**[DEFENSE COUNSEL]: That you were leaning toward 6 years.**

**THE COURT: Leaning toward?**

**[DEFENSE COUNSEL]: Yes.**

THE COURT: But not what I would do, right?

[DEFENSE COUNSEL]: That's – that's my recollection.

THE COURT: Okay. Made to you or in the presence of Mr. Foster?

[DEFENSE COUNSEL]: Well, and that's where my –

THE COURT: I mean, to you and [the prosecutor] is what I mean. I don't think I've ever had discussions with you or [the prosecutor] about the case without the presence of one another.

[DEFENSE COUNSEL]: Yeah. And I recall the video conferencing and the Court said something to Mr. Foster along the lines of the 6 years. Can I tell the Court exactly what – how you worded it? No, I can't.

THE COURT: Okay. No. I mean, you're –

[DEFENSE COUNSEL]: Yeah.

THE COURT: I've always – I've always, I mean, I have a high regard for both you and [the prosecutor]. And, [prosecutor], do you recall anything that was said.

[PROSECUTOR]: You did not make any type of agreement. N-O-T. Not make any type of agreement that he would receive 6 years for any type of plea. In fact, what you did say is that, what, if perhaps, we had two felonies of the third degree? And there was an agreement for those to be maximum consecutive sentences, which ultimately would equal 6 years. And the State –

THE COURT: No. I remember – I remember I said that. I reviewed that. That was on February 28th that I made that statement.

[PROSECUTOR]: And the State definitively said no. N-O. And the reason was because we were dealing with 151.38 grams of

**powder cocaine for which the benefit to Mr. Foster would be the elimination of three potential years off a mandatory maximum sentence. The document he signed that day for which I find this argument completely disingenuous by both Mr. Foster and I don't know what I think yet about [defense counsel's] position. But nonetheless, on page two it says rights here. The plea agreement – this is what Mr. Foster signed. It says, I understand that there is no agreed sentencing recommendation. It goes on to the next sentence. It says, I understand further that the State and I will argue sentencing and that the Court may impose any lawful sentence upon me. When we switch to page three of that signed plea agreement that Mr. Foster sat in this court after taking an oath, that he understood everything and that he could ask his attorney any kind of questions. \* \* \*** [Prosecutor goes through other parts of the plea agreement that he feels support his point] **\* \* \* Unless we want to go through the procedure of arguing that he did not knowingly, intelligently, and voluntarily sign and agree to this particular plea agreement, which I think is a tremendously hard burden for him to overcome at this point. But take note of this, if we go to trial, I fully intend to make certain that we prove all of these elements against you and then seek the full 14 years. This argument is disingenuous. It's a waste of time. It's dilatory. And this, quite frankly, is the behavior of somebody who has gained [sic] the system for quite some time. It's regrettable that he hasn't learned his lesson. Quite frankly, he hasn't learned his lesson even yet now. Let the 8 years stand or let's go to trial. \* \* \***

**THE COURT: I did review the – the first hearing on the 19th, which was the day that he entered the plea. \* \* \* And one of the things that you wanted was that he be sentenced that day. And then [the prosecutor] wanted a presentence investigation. And in my discussion with everyone, including Mr. Foster, I indicated that I had reviewed [the criminal records available], \* \* \* [b]ut I indicated that you couldn't tell – I think I indicated that you couldn't tell with the – with the same degree that a presentence investigation report would tell, that it was the State's right and that the Court would want to know everything about Mr. Foster before passing sentence. So, \* \* \* the Court's belief is that upon complete review, I've spent a lot of time on this case before**

imposing sentence here today. The Court believes that its imposed the correct sentence for the offenses committed by the Defendant. And that the Defendant got the benefit of his bargain with the State of Ohio by saving 3 years mandatory. And the Court's acknowledged his acceptance of responsibility by imposing a concurrent sentence as opposed to consecutive as requested by the State. The Court believes that the sentence is the correct sentence and that stands. He can – he can appeal if he wants. And I have endeavored to review all of the record that was pointed out by Mr. Foster. There's no hearing that was held on the 16ᵗʰ.

[DEFENDANT]: I might have got the dates wrong, your Honor. But that was my last pretrial to be held by virtual. I was at the jail. And just [to] correct everybody. You didn't say I was going to get 6 years. I asked you, specifically, me and you and everybody was present. You was on the monitor. You was talking to me, sir. And you said you would give me no more than 6 years. Cause I asked you, I said, so, just if I take the open plea cause it didn't make since [sic], like, why wouldn't I just accept the 8 years if I knew I was going to get 8 years. So, meaning I accepted it. The open plea meaning that I could get a little under 6 or I didn't think you were going to give me the 6 years, honestly, your honor. But I was thinking worse [sic] case scenario cause it came from you, your Honor, that you said you would give me no more than 6 years. That's exactly what you said. You didn't say, hey, I'm going to give you 6 years. Correct what the Prosecutor is saying. No, you didn't say that. You said you would give me no more than 6 years. And that's the point of why I accepted the open plea. * * * That's why I accepted the open plea. You didn't say, hey, I'm going to give you 6 years. No, you did not say that, sir. But you said you would give me no more. And you was looking at me through the virtual video. And that's why I was willing. And at the end of the day I confided with my lawyer. And he said – he said, worse case scenario. I said, what do you think Judge Fraser will give me? He said, probably 6. And that was what you said in court. That's why he said he recall you saying 6 years.

* * *

> **THE COURT: The Court \* \* \* wasn't aware of conduct on – at the time I made any statements. And I'm not going to argue with you. You're saying that I said it. And your memory may be better than mine. I don't think it is, but it may be better than mine, so. And [defense counsel] believes that I've made some representation regarding 6 years. But it clearly, first of all, I never commit – in 11 and-a-half years I've never committed to what a sentence would be by the Court. I always review everything I am supposed to review before sentencing someone, especially with a sentencing being argued. Secondly, I clearly, at the time that I presided over any pretrials held in this case, I was not aware of the egregious nature of the conduct that occurred on the 1st of November of last year. I believe that was the day in Franklin County. That, in and of itself, to me changes everything. \* \* \* And that in and of itself would be a reason for me to enhance any sentence that I was contemplating. And that's my order. So court's in recess. Thank you.**

(Tr. at 35-50).

{¶28} Foster renews his protest on appeal, arguing that the trial court promised to sentence him to no more than six years in prison, and that promise induced him to enter his plea. We emphasize that there simply is no basis contained in the record for Foster's argument. The record itself does not contain any language wherein the trial court ever promised Foster that Foster would be sentenced to no more than six years in prison.

{¶29} Nevertheless, Foster and his attorney claimed to the trial court that the statement must have occurred *off the record*. We are not in a position as an appellate court to enforce a purported oral contract that was allegedly made off the record, particularly where only one party to the claimed contract "remembered" a promise

occurring. Moreover, although Foster contends that his attorney recalled a six-year promise, the best the attorney could say is that he recalled the trial court saying it was "leaning" toward six years. Even if that was said—and we have no indication that it was said—"leaning" is not the same as a promised sentence, particularly when Foster was advised repeatedly that the trial court could sentence him up to the maximum and sentencing would be argued by the parties. Further, as the trial court indicated, if the trial court made any prior statement regarding "leaning" toward a specific prison term, it was without knowledge of Foster's entire criminal record.

{¶30} Based on the record before us, we cannot find that any type of contract was created with the trial court as a party. Even if we did somehow find that there was a contract created with the trial court as a party, we could not find that the terms were definite enough to require specific enforcement of a prison term of "no more than six years" as Foster requests. Thus the only remedy available to Foster, even if we found his argument was valid, would be complete rescission of the plea agreement. Complete rescission would put the first degree felony charges back on the table, which *required* a *mandatory maximum eleven year prison term*.

{¶31} In sum, this case is far different from any cases cited by Foster wherein a trial court promised a sentence and then failed to fulfill it. *See State v. Stanley*, 8th Dist. Cuyahoga No. 43469, 1981 WL 4727 (trial judge made specific promise of sentence then did not impose the promised sentence); *Vari*, *supra* at ¶ 30. There

is no definite, explicit promise contained in the record here, and the Crim.R. 11 colloquy indicated Foster was fully apprised and aware that he could be sentenced to a maximum prison term when he entered his plea. *See State v. Sharpley*, 8th Dist. Cuyahoga No. 106616, 2018-Ohio-4326. He never indicated that other promises were made prior to being ordered to serve a maximum prison term. For all of these reasons, Foster's first assignment of error is overruled.

*Second Assignment of Error*

**{¶32}** In his second assignment of error, Foster argues that the trial court's sentence was contrary to law. More specifically, Foster argues that the trial court misapplied the sentencing factors set forth in R.C. 2929.11 and R.C. 2929.12 when it imposed a maximum eight-year prison term.

Standard of Review

**{¶33}** Under R.C. 2953.08(G)(2), an appellate court will reverse a sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that " 'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *Id.* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

Relevant Authority

**{¶34}** "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than [a] minimum sentence[ ]." *State v. Castle*, 2d Dist. Clark No. 2016-CA-16, 2016-Ohio-4974, ¶ 26; *State v. White*, 3d Dist. Marion No. 9-19-32, 2020-Ohio-717, ¶ 8. Nevertheless, when exercising its sentencing discretion, a trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Kerns*, 3d Dist. Logan No. 8-18-05, 2018-Ohio-3838, ¶ 8, citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, ¶ 38.

Maximum Prison Terms

**{¶35}** Here, the trial court imposed a maximum eight-year prison term for Foster's second degree felony. This prison term is within the appropriate statutory range and is compliant with the relevant statutes, therefore it is presumptively valid. *State v. Maggette*, 3d Dist. Seneca No. 13-16-06, 2016-Ohio-5554, ¶ 31; R.C. 2929.14. Moreover, the record clearly establishes the trial court analyzed the purposes and principles of felony sentencing and the sentencing factors set forth in R.C. 2929.11 and R.C. 2929.12 factors, both at the sentencing hearing and in its judgment entry of sentence.

{¶36} On appeal, Foster simply disagrees with the trial court's application of these factors to the facts and circumstances of his case.

*Appellate Review of R.C. 2929.11 and R.C. 2929.12 Factors*

{¶37} The Supreme Court of Ohio recently clarified an appellate court's review of felony sentences under R.C. 2953.08(G)(2). *See*, *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, ¶ 39. The Supreme Court ruled that R.C. 2953.08(G)(2)(a) "clearly does not provide a basis for an appellate court to modify or vacate a sentence if it concludes that the record does not support the sentence under R.C. 2929.11 and R.C. 2929.12 because * * * R.C. 2929.11 and R.C. 2929.12 are not among the statutes listed in the provision." *Id*. at ¶ 31. Thus, the Supreme Court concluded that an appellate court may not modify or vacate a felony sentence based upon a finding by clear and convincing evidence that the record does not support the trial court's "findings" under R.C. 2929.11 and R.C. 2929.12. *See id.* at ¶ 42 ("Nothing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12.").

{¶38} The Supreme Court in *Jones* also confirmed that R.C. 2953.08(G)(2)(b) does not provide a mechanism for an appellate court to modify or vacate a felony sentence based upon a finding that the sentence is "contrary to law"

because it clearly and convincingly is not supported by the record under R.C. 2929.11 and R.C. 2929.12. *Id.* at ¶ 32-39. "As a result of the Supreme Court's holding in *Jones*, when reviewing felony sentences that are imposed solely after considering the factors in R.C. 2929.11 and R.C. 2929.12, we shall no longer analyze whether those sentences are unsupported by the record. We simply must determine whether those sentences are contrary to law." *State v. Dorsey*, 2d Dist. Montgomery No. 28747, 2021-Ohio-76, ¶ 18. "A sentence is contrary to law when it does not fall within the statutory range for the offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12." *Id.* citing *State v. Brown*, 2d Dist. No. 2016-CA-53, 2017-Ohio-8416, ¶ 74; *see State v. D-Bey*, 8th Dist. Cuyahoga No. 109000, 2021-Ohio-60, ¶ 65.

{¶39} In sum, the record demonstrates that the prison term imposed by the trial court in this case is within the statutory range and that the trial court considered the statutory factors in R.C. 2929.11 and 2929.12 when it imposed the maximum prison term upon Foster. Thus, Foster's sentence is *not* clearly and convincingly contrary to law, and it must therefore be affirmed. *See State v. Slife*, 3d Dist. Auglaize No. 2-20-17, 2021-Ohio-644, ¶ 17; *Burks*, 2d Dist. Clark No. 2019-CA-70, 2021-Ohio-224, ¶ 9, ("Under *Jones*, this ends the inquiry regarding the individual sentences. In this respect, there is no basis upon which to modify or

vacate either individual sentence."); *see also*, *D-Bey, supra*, ¶ 75, citing *Jones* at ¶ 39 (concluding that "this court cannot review D-Bey's sentences to determine whether they are "excessive" or otherwise not "supported by the record under R.C. 2929.11 and 2929.12."). Therefore, Foster's second assignment of error is overruled.

*Third Assignment of Error*

{¶40} In his third assignment of error, Foster argues that the trial court erred by failing to make a record of all of Foster's pretrial hearings pursuant to Crim.R. 22.

Analysis

{¶41} Criminal Rule 22 governs the recording of proceedings, and it reads as follows.

> **In serious offense cases all proceedings shall be recorded.**
>
> **In petty offense cases all waivers of counsel required by Rule 44(B) shall be recorded, and if requested by any party all proceedings shall be recorded.**
>
> **Proceedings may be recorded in shorthand, or stenotype, or by any other adequate mechanical, electronic or video recording device.**

{¶42} The Supreme Court of Ohio has specifically addressed Crim.R. 22 on multiple occasions, holding,

> **this court has clearly held that reversal of convictions and sentences on grounds of some unrecorded bench and chambers**

> **conferences, off-the-record discussions, or other unrecorded proceedings will not occur in situations where the defendant has failed to demonstrate that (1) a request was made at trial that the conferences be recorded or that objections were made to the failures to record, (2) an effort was made on appeal to comply with App.R. 9 and to reconstruct what occurred or to establish its importance, and (3) material prejudice resulted from the failure to record the proceedings at issue.**

*State v. Palmer*, 80 Ohio St.3d 543, 554 (1997). Further, the Supreme Court of Ohio has specifically "repeatedly refused to reverse convictions or sentences on the basis of unrecorded conferences when a defendant has not" requested that unrecorded conferences be recorded. *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, ¶ 160.

{¶43} In this case, Foster has failed to meet the *Palmer* requirements above. While he attempted to supplement the record unsuccessfully under App.R. 9(C) in this matter, there is no indication that he objected to the trial court's "failure" to record any hearings in this matter, which is fatal by itself. *See State v. Young*, 12th Dist. Butler No. CA2020-04-052, 2021-Ohio-2541, ¶ 88. Moreover, even if he did object to any "failure to record," Foster would have to show material prejudice. His prejudice claim here is entirely speculative, particularly since the trial court and the prosecutor denied any sentencing promise was ever made. Speculative prejudice is insufficient to demonstrate material prejudice. *See State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 123. For all of these reasons, Foster's third assignment of error is overruled.

*Fourth Assignment of Error*

**{¶44}** In his fourth assignment of error, Foster argues that the trial court erred by electing not to accept his proposed "Statement of the Evidence" under App.R. 9(C).

Standard of Review

**{¶45}** A trial court's decision regarding App.R. 9 is within its sound discretion. *State v. Cross*, 7th Dist. Mahoning No. 07-MA-74, 2008-Ohio-3240, ¶ 33. Thus, we will not reverse the trial court's decision to supplement or correct the record absent an abuse of discretion. An abuse of discretion is more than an error of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157-58 (1980).

Relevant Authority

**{¶46}** Appellate Rule 9 reads, in pertinent part, as follows.

**(C) Statement of the Evidence or Proceedings When No recording Was Made, When the Transcript of Proceedings Is Unavailable, or When a Recording Was Made But Is No Longer Available for Transcription.**

**(1)   If no recording of the proceedings was made, if a transcript is unavailable, or if a recording was made but is no longer available for transcription, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement shall be served on the appellee no later than twenty days prior to the time for transmission of the record pursuant to App. R. 10 and the appellee may serve on the appellant objections or propose amendments to the statement within ten days after service of the**

**appellant's statement; these time periods may be extended by the court of appeals for good cause. The statement and any objections or proposed amendments shall be forthwith submitted to the trial court for settlement and approval. The trial court shall act prior to the time for transmission of the record pursuant to App.R. 10, and, as settled and approved, the statement shall be included by the clerk of the trial court in the record on appeal.**

**(2)   In cases initially heard in the trial court by a magistrate, a party may use a statement under this division in lieu of a transcript if the error assigned on appeal relates solely to a legal conclusion. If any part of the error assigned on appeal relates to a factual finding, the record on appeal shall include a transcript or affidavit previously filed with the trial court as set forth in Civ.R. 53(D)(3)(b)(iii), Juv.R. 40(D)(3)(b)(iii), and Crim.R. 19(D)(3)(b)(iii).**

**\* \* \***

**(E)   Correction or Modification of the Record.**

**If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by the trial court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated, the parties by stipulation, or the trial court, either before or after the record is transmitted to the court of appeals, or the court of appeals, on proper suggestion or of its own initiative, may direct that omission or misstatement be corrected, and if necessary that a supplemental record be certified, filed, and transmitted. All other questions as to the form and content of the record shall be presented to the court of appeals.**

Analysis

**{¶47}** In this case, Foster filed a proposed statement of evidence pursuant to

App.R. 9 arguing that a conversation occurred between the trial court and himself at an unrecorded pretrial hearing wherein a promised sentence was purportedly made. The state objected to the proposed statement of evidence, and the trial court did not adopt Foster's proposal, reasoning that part of the proposed statement of evidence contained statements between Foster and his attorney. "The Court finds that neither the Court nor the State have any independent knowledge of the private discussions had between [defense counsel] and Mr. Foster; therefore, cannot approve or deny those portions of the submitted Statement of Evidence or Proceeding." (Doc. No. 132). As to the remainder of the proposed statement of evidence, the trial court declined to approve it, stating that the sentencing transcript contained the trial court's full recollection of the matter.

{¶48} In this case, we cannot find that the trial court abused its discretion where Foster's proposed statement of evidence is self-serving and his purported "facts" are denied by the remaining parties involved. The record does not support reversal on this matter. *See State v. Midwest Pride IV, Inc.*, 131 Ohio App.3d 1, 16 (12th Dist.1998). There simply is no basis for this Court to overturn a trial court's recollection of what transpired under App.R. 9. For these reasons, Foster's fourth assignment of error is overruled.

*Conclusion*

**{¶49}** For the foregoing reasons Foster's assignments of error are overruled and the judgment and sentence of the Union County Common Pleas Court is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and MILLER, J., concur.**

**/jlr**